IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JILL OLMSTED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18-cv-03095 |
| v. ) | |
| ) | Honorable John Z. Lee |
| THE ILLINOIS INSTITUTE OF ART - ) | |
| SCHAUMBURG, INC., THE ILLINOIS ) | |
| INSTITUTE OF ART – SCHAUMBURG, LLC, ) | |
| and EDUCATION MANAGEMENT LLC, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT THE
ILLINOIS INSTITUTE OF ART OF SCHAUMBURG, LLC'S MOTION
TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT**

Plaintiff Jill Olmsted, by and through her attorneys, the Law Offices of Colleen M. McLaughlin, and for her Memorandum in Opposition to Defendant the Illinois Institute of Art Schaumburg, LLC's ("Defendant" or "IIAS, LLC") Motion to Dismiss Count II of Plaintiff's Complaint (Dkt. #33-34), states as follows:

**INTRODUCTION**

Defendant IIAS, LLC moves to dismiss Plaintiff's state law retaliatory discharge claim, Count II, claiming Defendant cannot be liable under a theory of successor liability. Defendant argues that only a former employer (and not a successor entity) can be a proper defendant in a retaliatory discharge claim. It further alleges that when applying the Illinois (rather than federal) successor liability standard, Plaintiff does not show any exceptions to the general Illinois rule that a corporation purchasing the assets of another corporation is generally not liable for the debts and assets of the seller.

Defendant's contention that only a former employer is the proper defendant in a retaliatory discharge claim is misguided. The sole case cited by Defendant supporting this assertion, *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 22 (1998), discusses the proper defendant in the context of whether a former supervisor (not successor) can be liable for retaliatory discharge. Further, Defendant erroneously applies the Illinois law successor liability standards. Federal successor liability should be applied when the plaintiff brings both federal and state employment-related claims. *See Sheils v. GateHouse Media, Inc.*, No. 12 CV 2766, 2015 U.S. Dist. LEXIS 145303 (N.D. Ill. Oct. 27, 2015); *United States ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F. Supp. 2d 695 (N.D. Ill. 2012).

Finally, even if the Illinois successor liability standard applies, Plaintiff has adequately pled the *de facto* merger or mere continuation exceptions. Although Plaintiff has not alleged a continuation of ownership, the only element Defendant contends is lacking (a continuity of shareholders), courts have held this is not necessary when the acquiring organization is an unincorporated association that does not have shareholders. *See 1550 MP Road LLC v. Teamsters Local Union No. 700*. 2017 IL App (1st) 153300; *Parker v. Metropolitan Transportation Authority*, 97 F. Supp. 2d 437 (S.D.N.Y. 2000).

Defendant's Motion to Dismiss Count II should be denied.

## FACTUAL BACKGOUND

Ms. Olmsted worked for IIAS INC, a for-profit university located in Schaumburg, Illinois, as the Dean of Academic Affairs from approximately July 2015 until her termination on January 27, 2016. (Dkt. 1, Complaint, ¶ 4). EDMC, which owned IIAS, Inc. during Plaintiff's employment, was headquartered in Pittsburgh, Pennsylvania. (Id. at ¶ 5). On January 27, 2016, Mr. Ray

terminated Ms. Olmsted's employment, citing "significant gaps in [her] leadership and judgment" as the basis for her discharge. (Id. at ¶ 73).

Plaintiff alleges in Count I of her Complaint that her gender was a motivating factor in her discharge. (Id. at ¶ 3). Campus President, David Ray, treated similarly-situated male employees more favorably than Ms. Olmsted, and terminated Ms. Olmsted in response to her reports that male faculty members were not qualified to teach their courses; these faculty members were part of a "good ole boys club" that included Mr. Ray. (Id.). Ms. Olmsted also alleges in Count II that she was terminated in violation of Illinois public policy because she complained (1) that certain male faculty members at IIAS were not qualified to teach their assigned coursework and (2) that IIAS Inc. was overcharging students who enrolled in "mid-quarter" classes by requiring the students to pay full price for the courses despite receiving fewer hours of in-class instruction than comparable courses that did not utilize the "mid-quarter" schedule. (Id. at ¶ 2).

Around May 2018, EDMC sold IIAS, Inc. to DCEH, which now operates the school through IIAS, LLC. (Id. at ¶ 12). There has been a continuity in workforce between EDMC and DCEH, similarity of jobs and working conditions, similarity of supervisory personnel, and similarity of products and services. (Id. at ¶ 9). Through the sale, DCEH took control of IIAS Inc's campus, staff, student records (including those concerning academics and financial aid), and curriculum. (Id. at ¶ 11). DCEH, through IIAS LLC, has continued university operations through use of IIAS Inc's campus, equipment, curriculum, staff, and marketing materials, such as IIAS Inc's website. (Id. at ¶ 12). There has been a continuity in workforce between IIAS Inc and IIAS LLC, similarity of jobs and working conditions, similarity of supervisory personnel, and similarity of products and services. (Id. at ¶ 13). In other words, there has been a substantial continuity between the business operations of IIAS Inc and IIAS LLC before and after the acquisition. (Id. at

¶ 14). Mr. Ray, the decision-maker with respect to Ms. Olmsted's termination, continues to serve as Campus President of IIAS LLC, which is the same role he held at IIAS Inc. (Id. at ¶ 15).

On May 1, 2018, Plaintiff filed her Complaint against the IIAS, Inc., IIAS, LLC, Education Management LLC, and Dream Center Education Holdings, LLC. Plaintiff brings claims under Title VII of the Civil Rights Act of 1991 for gender discrimination and under Illinois common law for retaliatory discharge. On June 22, 2018, the Court granted Plaintiff's unopposed Motion to Dismiss Dream Center Education Holdings, LLC without prejudice. (Dkt. #39). On June 29, 2018, IIAS, Inc. and Education Management LLC filed Chapter 7 bankruptcy, and notified the Court of such bankruptcy on July 2, 2018. (Dkt. 44), leaving IIAS, LLC the only remaining defendant not in bankruptcy.

## LEGAL STANDARD

The Federal Rules of Civil Procedure authorize dismissal of claims for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). In the context of a motion to dismiss, the Court takes as true the facts as set forth in the complaint along with all reasonable inferences. *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 995 (7th Cir. 2014). On a motion to dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

**ARGUMENT**

**I.      Defendant can be liable under successor liability for retaliatory discharge claims.**

Defendant argues that the only proper defendant in a retaliatory discharge claim is the employee's former employer. (Dkt. #34, Memo in Support, p. 4) (citing *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 22 (1998)). However, Defendant's only cited case on this argument, *Buckner*, is not at all related to successor liability. Rather, it is a case finding employer's supervisors, rather than the entity itself, cannot be held liable under a retaliatory discharge claim. *Id. Buckner* did not deal with the situation where Plaintiff raised claims against Defendant's successor, the issue present in this case.

Courts actually confronted with the issue at hand find that successor liability applies in the retaliatory discharge context. *Sheils v. GateHouse Media, Inc.*, No. 12 CV 2766, 2015 U.S. Dist. LEXIS 145303 (N.D. Ill. Oct. 27, 2015) (applying federal successor liability standard to federal and state law employment claims); *DeMauro v. MTH Enterprises LLC*, 2014 IL App (1st) 132383-U; *DeMauro v. MTH Enterprises LLC*, 2014 IL App (1st) 132383-U (dismissing Plaintiff's retaliatory discharge claim only after going through successor liability analysis). Thus, a successor entity can be liable for retaliatory discharge.

**II.     The federal successor liability standard is applicable to both Plaintiff's gender discrimination (Count I) and retaliatory discharge (Count II) claims.**

Defendant alleges in a footnote that this Court should apply State law successor liability because this case involves a tort claim over which the Court has supplemental jurisdiction. (Dkt. #34, Memo in Support, p. 4, n. 2). However, numerous Courts in this Circuit have found in the employment context that when a Plaintiff brings both state and federal claims, the federal successor liability standard applies to both types of claims.

In *Sheils v. GateHouse Media, Inc.*, a case involving both federal and state law employment claims, the Court properly applied the federal successor liability standard to all claims. No. 12 CV 2766, 2015 U.S. Dist. LEXIS 145303 (N.D. Ill. Oct. 27, 2015). In *Gatehouse*, the Plaintiff brought claims for FMLA retaliation, Illinois retaliatory discharge, and overtime under the Fair Labor Standards Act and Illinois law. *Id.* at 1. Despite the included state law claims, the Court found in cases involving multiple corporate entities, successor liability is the default rule to enforced federal labor or employment laws. *Id.* (citation omitted). Without successor liability, "the victim of the illegal employment practice is helpless to protect his rights against an employer's change in the business" because "the predecessor's illegal act may have left the employee without a job, promotion, or other employment benefits that he cannot now obtain from another employer, but that he might have received from the successor had the predecessor not violated the employee's rights." *Northern Star*, 777 F.3d 898, 901-02 (7th Cir. 2015) (quoting in part *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 746 (7th Cir. 1985)).

Similarly, in *United States ex rel. Geschrey v. Generations Healthcare, LLC*, the Court applied the federal successor liability standard in an employment dispute with federal and state law claims. 922 F. Supp. 2d 695 (N.D. Ill. 2012). The plaintiff brought claims under the federal False Claims act, the Illinois False Claims Act, and the Illinois Whistleblower Reward and Protection Act. *Id.* at 698. Again, instead of applying the different standards to the different state and federal claims, the Court only applied the federal successor liability standard to all claims.

As Plaintiff has brought both federal and state law employment-related claims, the federal successor liability standard applies. As Defendant does not move to dismiss Plaintiff's federal gender discrimination claim (Count I), it does not contest that Plaintiff sufficiently alleges successor liability under the federal standard. There is a five-factor test for successor liability in

the federal employment-law context: (1) whether the successor had notice of the pending lawsuit; (2) whether the predecessor could have provided the relief sought before the sale or dissolution; (3) whether the predecessor could have provided relief after the sale or dissolution; (4) whether the successor can provide the relief sought; and (5) whether there is continuity between the operations and work force of the predecessor and successor. *EEOC v. Northern Star Hosp., Inc.*, 773 F.3d 898, 902 (7th Cir. 2015). Given Plaintiff's allegations of substantial continuity, near-identical leadership, workspace, and equipment (*See* Dkt. #1, Complaint, ¶ 9-16), there can be little doubt she has sufficiently pled successor liability under federal law.

Therefore, employing the federal successor liability standard, Plaintiff has adequately pled that Defendant can be liable as a successor for both federal gender discrimination and Illinois retaliatory discharge.

### III. Even if the Court applies the Illinois successor liability standard, Defendant's Motion fails because Plaintiff's Complaint contains allegations that satisfies the *de facto* merger or mere continuation exceptions.

Defendant argues that Plaintiff has not pled any of the exceptions to the general rule that a purchaser of assets does not require a seller's liabilities. (Dkt. #34, Defendant's Memo, pp. 5-6). However, Plaintiff has alleged more than enough facts at this early stage showing the *de facto* merger or mere continuation exceptions are applicable.

"The doctrine of successor corporate nonliability provides that when a corporation purchases the assets of another corporation, the purchaser is generally not liable for the debts or liabilities of the seller." *Workforce Solutions v. Urban Services of America, Inc.*, 2012 IL App (1st) 111410, ¶ 86. Four exceptions, however, have been developed to protect the rights of corporate creditors following dissolution: "(1) where there is an express or implied agreement of assumption [of liability]; (2) where the transaction amounts to a consolidation or merger of the purchaser or

seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.'" *Id.* (quoting *Pielet v. Pielet*, 407 Ill. App. 3d 474, 508 (2010)). The *de facto* merger and mere continuation exceptions to successor corporation nonliability are inseparable. *Steel Co. v. Morgan Marshall Indus., Inc.*, 278 Ill. App. 3d 241, 248 (1996).

Defendant claims the *de facto* merger exception cannot be applied because Plaintiff did not allege a merger. However, the exception does not require a formal merger between two entities. Rather, it merely requires a *de jure* or *de facto* merger. *Arachnid, Inc. v. Valley Rec. Products, Inc.*, No. 98 C 50282, 2001 U.S. Dist. LEXIS 22460, at *41 (N.D. Ill. Dec. 27, 2001). The "mere continuation" exception is akin to a corporate reorganization where the corporation has, in effect, "put on a new coat." *Nilsson v. Continental Mach. Mfg. Co.*, 251 Ill. App. 3d 415, 418 (2d Dist. 1993).

In order to establish a *de facto* merger, the following factors must be present: (1) a continuity of the business enterprise between seller and buyer, including continuity of management, employees, location, general business operations and assets; (2) a continuity of shareholders, in that shareholders of the seller become shareholders of the buyer so that they become a constituent part of the buyer corporation; (3) the seller ceases operations and dissolves as soon as possible after the transaction; and (4) the buyer assumes those liabilities and obligations necessary for the uninterrupted continuation of the seller's business. *Steel Co. v. Morgan Marshall Indus., Inc.*, 278 Ill. App. 3d 241, 248 (1996).

Viewing the Complaint in the light most favorable to Plaintiff, the first, third, and fourth *de facto* merger elements are adequately pled and not contested by Defendant. IIAS, Inc. was sold to DCEH. (Dkt. #1, Complaint, ¶ 6). The EDMC schools subject to the sale continued operations,

but as not-for-profit universities owned by DCEH. (*Id.* at ¶ 7). Approximately three months after the sale, IIAS, Inc. informed the arbitrator in this case of its intention to file for bankruptcy. (*Id.* at ¶ 27). There has been a continuity in workforce between EDMC and DCEH, similarity of jobs and working conditions, similarity of supervisory personnel, and similarity of products and services. (*Id.* at ¶ 9). There has been a substantial continuity between the business operations of EDMC and DCEH before and after the acquisition. (*Id.* at ¶¶ 9-15). This includes a continuation of leadership, such as David Ray, who was a key decision-maker and president of the entity. (*Id.* at ¶ 3, 15). At the pleadings stage, without the benefits of discovery, Plaintiff has met the above elements.

Admittedly, Plaintiff has not pled a continuity of shareholders. This, of course, is impossible because the acquiring organization, IIAS, LLC, is a not-for-profit with no shareholders. (Dkt. #1, Complaint, ¶ 7); *National Asso. of Realtors v. National Real Estate Asso.*, 894 F.2d 937, 938 (7th Cir. 1990) (Illinois not-for-profit corporations do not have shareholders or owners). However, the same issue arose in *1550 MP Road LLC v. Teamsters Local Union No. 700*. 2017 IL App (1st) 153300. In that case, Defendants argued that successor liability could not apply to labor unions on the basis of a *de facto* merger or on a "mere continuation" theory because there will never be continuity of ownership. *Id.* at ¶ 39. There defendants claimed that as Illinois courts determine whether a successor entity constitutes a continuation by analyzing similarity in ownership of the two entities, this type of analysis is not aptly transferable to a labor union because it does not have 'owners' in the same way as a corporation or other business entity. *Id.*

The Court found it is appropriate to use different framework for determining whether an unincorporated association, such as a labor union, may be liable under a theory of successor liability for the liabilities of a dissolved association. *Id.* at ¶ 42 (citing *Parker v. Metropolitan Transportation Authority*, 97 F. Supp. 2d 437 (S.D.N.Y. 2000)). The factors to be considered

9

include: (1) the relationship between the dissolved and successor associations, (2) whether there was substantial continuity of the dissolved association after a merger or consolidation, (3) whether the successor association had notice of the dissolved association's liabilities, and (4) whether there are important state policies that would be affected by declining to impose successor liability. *Id.*; see also *Parker*, 97 F. Supp. 2d at 440.

Although IIAS, LLC is not an unincorporated association like a union, the same rationale applies. Both successor organizations do not have shareholders, and thus could not maintain continuity of ownership. "'The exception is designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of the reach of the predecessor's creditors … To allow the predecessor to escape liability by merely changing hats would amount to fraud. Thus, the underlying theory of the exception is that, if a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability.'" *Vernon v. Schuster*, 179 Ill. 2d 338, 346 (1997) (quoting *Baltimore Luggage Co. v. Holtzman*, 80 Md. App. 282, 296, (1989)).

Applying the first and second factors, as discussed above, there was substantial continuity between the business operations of EDMC and DCEH before and after the acquisition, from work locations to leadership. (*Id.* at ¶¶ 9-15). Applying the third factor, given the substantial continuity and continuing leadership (including the lead decision-maker and president), a reasonable conclusion when viewing the allegations in the light most favorable to the Plaintiff is that Defendant had notice of the dissolved association's liabilities. Finally, there are important state policies that would be affected by declining to impose successor liability. As the Court found in *1550 MP Road*, Illinois policies would not support allowing an organization to avoid its obligations by merely converting into a different entity. Moreover, as the Court found in *EEOC v. Local 638*,

respect for federal courts and protections for employees are important federal policies that favor a finding in successor liability.

Thus, Plaintiff has alleged more than enough facts to survive Defendant's motion to dismiss at this early stage in litigation. *See Crowe v. Strong Built, Inc.*, No. 11-354-GPM, 2012 U.S. Dist. LEXIS 121714 (S.D. Ill. Aug. 28, 2012) (denying Defendant's motion to dismiss claims on successor liability grounds, finding the FRCP do not require the heavy burden Defendant asks the Court to impose).

## CONCLUSION

Defendant IIAS, LLC's Motion for Dismiss Count II of Plaintiff's Complaint should be denied.


Colleen M. McLaughlin   Respectfully Submitted
Law Offices of Colleen M. McLaughlin   */s/ Colleen McLaughlin*
1751 S. Naperville Rd., Ste. 209
Wheaton, IL 60189   One of Plaintiff's Attorneys
603-221-0305
colleen@cmmc-employmentlaw.com

Quinton Osborne
Osborne Employment Law
1751 S. Naperville Rd. Ste. 209
Wheaton, IL 60189
quinton@osborneemploymentlaw.com

**CERTIFICATE OF SERVICE**

I certify that on December 27, 2018, I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT THE ILLINOIS INSTITUTE OF ART OF SCHAUMBURG, LLC'S MOTION TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Colleen M. McLaughlin	Respectfully Submitted
Law Offices of Colleen M. McLaughlin	 */s/ Colleen McLaughlin*
1751 S. Naperville Rd., Ste. 209
Wheaton, IL 60189	One of Plaintiff's Attorneys
603-221-0305
colleen@cmmc-employmentlaw.com

Quinton Osborne
Osborne Employment Law
1751 S. Naperville Rd. Ste. 209
Wheaton, IL 60189
quinton@osborneemploymentlaw.com